JOSEPH TROVATO *vs.* PAUL T. WALSH & others.[1]

Middlesex.  February 6, 1973. — May 4, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Rent Control. Real Property,* Ownership. *Words,* "Owner-occupied."

The phrase "owner-occupied two-family or three-family house" in St.
  1970, c. 842, § 3 (b) (6), refers to beneficial ownership. [535–536]
A two family house was excepted from rent control under St. 1970,
  c. 842, § 3 (b) (6), as "owner-occupied" where the beneficial owner
  lived in one of the apartments and had conveyed the premises to
  her son as record owner to manage as her agent. [536]

BILL IN EQUITY filed in the Superior Court on September 30, 1971.

The suit was heard by *Kalus,* J.

*David Goldman* for the plaintiff.

*David W. Walsh* for the defendants.

BRAUCHER, J.  The plaintiff appeals from a final de-
cree declaring that certain premises in Somerville are
situated in an owner-occupied two-family house excepted
from rent control.  St. 1970, c. 842, § 3 (b) (6).  The
trial judge made findings, rulings and an order for de-
cree, and the evidence is reported.  We summarize the
findings.

The defendant, Edith I. Walsh (Edith), now age
seventy-six, and her husband acquired the premises, a
two-family house, in 1923 as tenants by the entirety.
Since then she has lived continuously in the downstairs
apartment; her husband died in 1955.  In 1964 she con-
veyed the premises to her son, the defendant Paul T.
Walsh (Paul), now age thirty-three, to manage them
"as her agent."  He lived in the upstairs apartment with
his wife, the defendant Irene B. Walsh, and their chil-
dren until they moved to another residence in 1966.  The
plaintiff with his wife and seven children moved into the

---

[1] Irene B. Walsh and Edith I. Walsh.

upstairs apartment in 1966 as a tenant at will.  Paul showed the apartment to the plaintiff and made all rental arrangements; rental payments were made to Paul.

In June and July, 1970, the plaintiff paid a monthly rent of $125.  This was increased to $145, effective September 1, 1970.  The plaintiff agreed and has since paid the increased rent.  On January 1, 1971, rent control took effect in Somerville, and rents were rolled back to their June, 1970, level.  St. 1970, c. 842, § 6.  Thereafter, Paul explained the circumstances to the secretary of the Somerville rent control board and was told the premises were covered by rent control so long as he held the title and was not an occupant.  He then registered the premises, naming himself and his wife as landlords, and incorrectly recording the June, 1970, rental as $145 instead of $125.  In August, 1971, the plaintiff learned of rent control and discovered the incorrect rental recorded on Paul's registration form.  At the suggestion of the board, the plaintiff sent a letter notifying Paul of his intent to pay a monthly rent of $125 effective January 1, 1971.  On August 31, 1971, Paul conveyed the premises back to Edith.

The judge concluded that in 1964 Paul took only naked legal title to the premises, without any monetary consideration therefor, upon the express understanding that Edith was to be the beneficial owner.  Since she was at all times the beneficial owner, he ruled that the premises were excepted from rent control as "owner-occupied" under § 3 (b) (6) of the statute, notwithstanding the fact that Paul held record title.  In all other respects, the final decree dismissed the plaintiff's bill of complaint.  On appeal the plaintiff argues, first, that Paul was the owner for the purposes of the rent control statute, and, second, that his reconveyance to Edith was undertaken solely to defeat the purposes of the statute and was of no effect.  In the view we take of the case, we need deal only with the first argument.

1. The plaintiff first attacks the finding that Edith was the beneficial owner, relying in part on the statute

of frauds, G. L. c. 259, § 1.    That statute was not
pleaded, and in any event it is inapplicable.   Oral trusts
of land are rendered unenforceable by G. L. c. 203, § 1,
but that statute does not prevent the parties from recog-
nizing the oral understanding by conveying the land in
accordance with it.   *Perkins* v. *Hilton,* 329 Mass. 291,
293–294.   See *Young* v. *Paquette,* 341 Mass. 67, 76.   In
general third parties may not take advantage of the stat-
ute of frauds.   *Hoffman* v. *Charlestown Five Cents Sav.
Bank,* 231 Mass. 324, 329.   See Restatement 2d: Con-
tracts (Tent. drafts Nos. 1–7, rev. and edited., 1973)
§ 218; Restatement 2d: Trusts, § 51.   So far as the
plaintiff attacks the judge's findings of fact, they are
not plainly wrong, and we accept them.   *Artemis* v.
*Malvers,* 322 Mass. 136, 137.   *Krasner* v. *Krasner,* 362
Mass. 186, 187–188.

2. There is room for doubt whether "owner" in the
exception of "owner-occupied" two-family houses from
rent control refers to beneficial ownership or to legal or
record ownership.   See *Kirby* v. *Assessors of Medford,*
350 Mass. 386, 390.   Compare *Breare* v. *Assessors of
Peabody,* 350 Mass. 391, 392–393; *Assessors of Cam-
bridge* v. *Bellissimo,* 357 Mass. 198, 199–200.   The bene-
ficial owner need not be the record owner in order to
maintain an action as landlord to recover possession.
*Connors* v. *Wick,* 317 Mass. 628, 630.   The reasons for
the exception are suggested in *Marshal House, Inc.* v.
*Rent Control Bd. of Brookline,* 358 Mass. 686, 694–696.
They turn on the facts that the excepted landlords "live
with only a few tenants and have to get along with them
on a day to day basis," that they have "pride of owner-
ship," that "the premises are not only a business prop-
erty but also their home," that "they live there," and that
they "are not in the business of real estate but are
merely renting out portions of their homes not necessary
for their own day to day living."

Such facts relate more to beneficial ownership than
to legal or record ownership.   Their force is somewhat
weakened if the beneficial owner turns over the manage-

ment of the rental portion to a professional real estate agent. In the present case there was undisputed testimony that the agent-son of the beneficial owner was a plumber, and there is no indication that he managed any other real estate. In any event, the statute does not distinguish between landlords or agents who are professionals and those who are amateurs. It is suggested that there may be some administrative convenience in looking solely to record ownership, but that would seem to invite a nonoccupant landlord to evade rent control by transferring record ownership to a tenant who resides in the two or three family dwelling.

We think the statute refers to beneficial ownership. It follows that the judge correctly ruled that the premises were "owner-occupied."

3. The plaintiff contends that the inequitable conduct of the defendants bars them from seeking declaratory relief. So far as Paul's registration of the premises as premises subject to rent control, with Paul and his wife as landlords and a rent of $145 in June, 1970, may have misled the plaintiff to his injury, the elements of equitable estoppel may be made out. Such an estoppel could not subject the premises to rent control, but it might bar the defendants from violating the provisions of the rent control statute designed to guard against retaliatory eviction. St. 1970, c. 842, § 9. Compare G. L. c. 186, § 18, inserted by St. 1969, c. 701, § 1; G. L. c. 239, § 2A, inserted by St. 1969, c. 701, § 2. See *McLearn* v. *Hill*, 276 Mass. 519, 524. The record on this appeal is not such as to permit us to make the findings necessary for such a conclusion, but our decision does not foreclose the assertion of estoppel in any pending or future action to recover possession of the premises.

*Decree affirmed.*