JOANNE M. KINCHLA & another,[1] trustees, vs. RENT CONTROL
BOARD OF BROOKLINE.

No. 87-359.

Norfolk. March 8, 1988. — April 20, 1988.

Present: GREANEY, C.J., PERRETTA, & SMITH, JJ.

*Rent Control,* Exemption. *Brookline. Real Property,* Ownership. *Municipal Corporations,* Rent control. *Words,* "Owner-occupied."

A District Court judge correctly upheld a decision of the Brookline rent control board denying the owners of a three-family house a certificate of exemption, on the basis of owner occupancy, from the town's rent and eviction control by-law, where the evidence before the board supported its determination that the owners failed to establish that the owner of record who occupied one unit in the house was a beneficial owner having a real financial commitment or a measure of management control over the property. [660-661]

CIVIL ACTION commenced in the Brookline Division of the District Court Department on October 29, 1985.

The case was heard by *Lawrence D. Shubow,* J.

*Stephen A. Greenbaum* for the plaintiffs.

*David William Adams* for the defendant.

GREANEY, C.J. The plaintiffs filed an application with the Brookline rent control board (board) for a certificate of exemption pursuant to § 3(b)(5) of the rent and eviction control by-law, art. XXXVIII of the by-laws of the town of Brookline (by-law), for the three-family house owned by them at 31 Perry Street.[2] The exemption was sought on the basis that one of the

---

[1] Michael Lebner, who, along with Kinchla, is a trustee of the 31 Perry Street Trust.

[2] In relevant part, the by-law reads as follows:

"Definitions. The following words or phrases as used in this by-law shall have the following meanings:

"  . . . .

dwelling units in the house was occupied by an owner, Joanne M. Kinchla. A hearing examiner held an adjudicatory hearing. The examiner recommended that the exemption be denied because the plaintiffs had failed to establish that Kinchla was a "beneficial owner of th[e] property." After reviewing the evidence before the examiner, the board entered a decision denying the application. A judge of the Brookline District Court reviewed the administrative record and entered a judgment upholding the board's decision. A report to the Appellate Division was dismissed.

The following is the pertinent background. The three-family house at 31 Perry Street was conveyed on June 5, 1984, to the plaintiffs as tenants in common. The plaintiffs financed the purchase by means of a first mortgage given to a bank and a second mortgage to the sellers. On September 19, 1984, the plaintiffs conveyed title to the property to themselves as the cotrustees of the 31 Perry Street Trust. The trust instrument indicates that the plaintiffs were also the sole beneficiaries, each holding a fifty-percent beneficial interest.

Kinchla moved into the third-floor dwelling unit in July, 1984, and, at least as of the date of the board's decision, she continued to reside there. The plaintiff Michael Lebner is not an occupant of the house. Lebner is in the business of owning and managing property. In addition to 31 Perry Street, he has an ownership interest in 7-9 Kendall Street, Brookline, a three-family house, and in 206 Aspinwall Avenue, Brookline, a two-family house. Lebner also claims to have a "partner" involved with him in the Kendall Street and Aspinwall Avenue houses, each of whom also had applied under the by-law for a certificate of exemption for the house in which the partner lived based upon the assertion that it was owner-occupied.

"(b) 'Controlled rental units', all rental units except:
" . . . .
"(5) the rental unit or units in an owner-occupied two-family or three-family house; provided that, this exception shall not apply to a building which was a four or more unit building and which became an owner-occupied two-family or three-family house after August 20, 1982."

At the hearing before the board, the plaintiffs asserted that they had a financial arrangement in 31 Perry Street which called for them to share equally all contributions, profits and losses. No agreement was produced to show that the arrangement had been memorialized in writing. Kinchla testified that she had contributed fifty percent of the down payment towards the purchase price of the property; yet she could not recall the exact amount of the total down payment. She did not produce any cancelled checks or other documents showing the amount of her alleged contribution. Kinchla also claimed that she made mortgage payments, but, as of the date of the hearing, she was able to produce only one cancelled check made payable to the first mortgagee. That check was dated twelve days after the plaintiffs had filed their application for a certificate of exemption. No payments were shown to have been made by Kinchla to the second mortgagee. No other proof of payment was introduced in evidence to establish that Kinchla was sharing equally in the expenses of operating the property. Although the hearing examiner left the proceedings open to receive a copy of the deed by which the plaintiffs took title to the property, the plaintiffs did not request the opportunity to submit additional documentation to support Kinchla's claim of ownership.

Brookline has declined to adopt legislation setting forth a rigid test for determining whether two-family or three-family houses otherwise subject to rent control are occupied by a person who is an owner. When an exemption is sought under the by-law, the board's approach is to consider record title as evidence of ownership but not to deem the state of the title decisive in every case. As a general rule, this approach is permissible. "It is suggested that there may be some administrative convenience in looking solely to record ownership, but that would seem to invite a nonoccupant landlord to evade rent control by transferring record ownership to a tenant who resides in the two or three family dwelling." *Trovato* v. *Walsh*, 363 Mass. 533, 536 (1973).

Where circumstances warrant, therefore, the board may go beyond external appearances and inquire whether the applicant

seeking the exemption as an owner-occupant has shown a significant measure of control over the property. For example, the board may ask whether the applicant has demonstrated responsibility for the property's management, and its occupancy and rents, and whether the applicant, in fact, bears a demonstrable share of its financial burdens. In some cases, the applicant claiming ownership may be able to show a history of involvement with the property, financial or otherwise, which indicates that the applicant has been, and continues to be, a true owner. See, e.g., *Trovato* v. *Walsh, supra*; *Dopazo* v. *Rent Control Bd. of Brookline, post* 990 (1988). In other cases, the board may want to be reasonably satisfied not only that the applicant is either a legal or beneficial owner but also that the applicant has meaningful involvement in the property and that the granting of the application will be consistent with the reasons underlying the exception. See *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 694-696 (1971).

By retaining flexibility without "analytical focus on legalistic forms," *Entis* v. *Rent Control Bd. of Brookline*, 399 Mass. 158, 162 (1987), the board can protect the rights of an applicant equitably entitled to the exemption (such as an elderly homeowner who conveys legal title to a son so that he can assume the burdens of management to help his parent, see *Trovato* v. *Walsh, supra*), while rejecting a superficial arrangement (such as that involved when an investor seeks partnership with a straw "owner" who lives in the building but whose investment is minimal and whose voice in rents, maintenance, and the building's policies is little more than that of a tenant). Applications for the exemption must necessarily be resolved on a case-by-case basis, with the tenability of the board's decision to be determined ultimately by a court under the settled principles that govern review of the decision of an administrative agency. See *Kahn* v. *Rent Control Bd. of Brookline*, 394 Mass. 709, 712 (1985).

The plaintiffs had the burden before the board of establishing that they were entitled to the exemption. Issues of credibility are for the board, and the board's choice between two conflicting

views is to be upheld, even if the judge reviewing the administrative record might have viewed the evidence differently had the matter been before him in the first instance. See *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 467-468 (1981); *Moulton* v. *Rent Control Bd. of Brookline*, 385 Mass. 228, 232 (1982).

We agree with the judge that there is adequate support for the board's decision denying the exemption. See *Entis* v. *Rent Control Bd. of Brookline*, 399 Mass. at 162-164. The board could very well have been skeptical of Lebner's activities with "partners" in three separate multi-family houses in Brookline, all seeking exemptions. The board could have considered Lebner's arrangements as suggesting straw ownerships contrived to acquire relief from rent control, a benefit prized by real estate investors in Brookline. Although Kinchla assumed some financial responsibility by signing the note which secured the first mortgage, the plaintiffs failed to show that her financial commitment was a real one, or that she had any measure of control over the property's management or operations. The failure of proof was at a basic level and included Kinchla's inability to remember what she had paid as her one-half of the down payment or to produce satisfactory evidence that she was paying her share of the mortgage. Considered as a whole, the plaintiffs' presentation sought to have the board "grasp at a shadow while the substance escape[d]." *Chase Natl. Bank* v. *United States*, 278 U.S. 327, 338 (1929).

It may have been that the plaintiffs came to the hearing confident in the view that Kinchla's ownership and her liability on the first mortgage note, along with the fact of her occupancy, were enough to acquire an exemption. There appears to be no rule in Brookline which precludes an occupant from joining with an investor to obtain an exemption, so long as the occupant's role in the transaction and in the operation of the building is substantial enough to convince a fact finder that the arrangement qualifies the occupant as a beneficial owner. We are satisfied, however, that the board properly made a deeper inquiry into that question in this case and that it had a reasonable

basis to reject the plaintiffs' application because it was not convinced by their proof. The other arguments made by the plaintiffs do not merit separate discussion.

*Order dismissing report affirmed.*